decision as the assignee and purchaser. This "Symbolic" was a mirage.

Bankruptcy is an intensely practical matter. The Trustee and the bankruptcy court were undoubtedly anxious to find a buyer and get cash to distribute to the creditors. Nonetheless, as two companies were ambiguously the purchaser, it cannot be concluded that an identified purchaser existed.

■ *Reasonably Withheld Consent to Assignment.* As Symbolic was not a good faith purchaser, § 363(m) does not protect the sale from attack. FNA consequently is free on this appeal to argue that its consent to the assignment was not unreasonably withheld.

■ For the same reasons we have held that the purchaser was not identified, we hold that FNA did not unreasonably withhold its consent. An automobile manufacturer with a special line of luxury motor cars and unhappy experience with an unreliable dealer, FNA was not unreasonable in objecting to dealing with the shifting financial structure presented under the fictitious business name Symbolic. The burden of proving that FNA was unreasonable in finding that Symbolic flunked the objective criteria of *Van Ness* was on Symbolic. *In re Claremont*, 186 B.R. 977, 985 (C.D.Cal.1995), aff'd. 113 F.3d 1029 (9th Cir.1997). Symbolic failed to carry its burden.

We need not decide at this point FNA's other contention that the defaults of the debtor were either uncured or incurable. FNA has raised serious doubts on this score, but the bankruptcy court is in the best position to take a look at the situation as it now stands over two years since that court last addressed it. Moreover, the assumption of the Franchise by the Trustee was approved in connection with the proposed sale to Symbolic. The situation now is new.

Accordingly, the Order approving the sale and assignment is REVERSED; the Order approving assumption of the Fran-chise by the Trustee is VACATED; the case is REMANDED to the bankruptcy court for proceedings consistent with this opinion.

**Kenneth Paul DOWS, Petitioner–Appellant,**

v.

**Tana WOOD, Respondent–Appellee.**

No. 99–35625.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 2000

Filed April 27, 2000

Patricia S. Novotny, Seattle, Washington, for the petitioner-appellant.

John J. Samson, Assistant Attorney General, Olympia, Washington, for the respondent-appellee.

Before: TROTT, KLEINFELD, and SILVERMAN, Circuit Judges.

TROTT, Circuit Judge:

Kenneth P. Dows ("Dows"), a Washington prisoner convicted of first-degree rape, appeals from the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. Dows argues that his attorney, Robert Egger ("Egger"), was ineffective because Egger was allegedly suffering from the effects of Alzheimer's disease at the time of Dows's trial. Dows claims that Egger was ineffective "per se" because of the disease and, alternatively, that Egger's performance at trial was deficient in several respects which resulted in actual prejudice to Dows. This court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we **AFFIRM.**

## I

Kenneth Dows was convicted by a jury in Washington state court for the first-degree rape of a woman, M.A. Dows was represented at trial by Robert Egger, who, eighteen months after the trial, was diagnosed with advanced Alzheimer's disease. The facts leading up to Dows's conviction and Egger's subsequent medical diagnosis are as follows: [1]

On the night of June 30, 1990, M.A. attended a Charlie Musselwhite concert at a Washington bar called the Ballard Firehouse. At approximately 12:30 a.m., M.A. saw a man showing pictures of himself with Musselwhite to other concert attendees. After this photo display, the man

---

1. The background information that follows was taken, in part, from the decision by the Washington Court of Appeals in Dows's direct appeal.

tried to play with Musselwhite's band, and when his request was unsuccessful, he gave Musselwhite his name, address, and phone number. The man left the bar before the concert ended.

When the concert was over, M.A. walked outside. Soon thereafter, she saw the same man who had tried to play with Musselwhite's band sitting in a large maroon car. The man offered M.A. a ride. She declined and walked away. While M.A. was looking for her car, the man drove by again. Minutes later, this same man appeared on foot and put his arm around M.A. When M.A. rebuffed his advances, the man held a knife to her ribs, beat, and raped her repeatedly.

M.A. told the police that she had seen her attacker showing photographs of himself and Musselwhite at the Musselwhite concert. She described the rapist as a slender man who was approximately 55 tall. In addition, M.A., a portrait artist, drew a sketch depicting the rapist with blond hair and a bush beard. When interviewed, Musselwhite informed the police that the man with the photographs had been Dows. M.A. later identified Dows in a photomontage. The state charged Dows with first-degree rape with a deadly weapon.

Dows's trial was set for January 6, 1992. Originally, Dows was represented by appointed counsel, Anne Harper, who withdrew on January 3, 1992, when Dows retained Egger. On the first day of trial, although he had only three days to prepare, Egger stated that he was ready to proceed. Before trial, Egger made several pre-trial motions, including a motion to exclude any reference to "mugshots" used to identify Dows in the photomontage and a request that the state not reveal to the jury that Dows had previously been incarcerated. Egger also stated that Dows would not take the stand.

At trial, Egger cross-examined M.A. Because the defense theory was mistaken identity, Egger's questions focused primarily on various inconsistencies in M.A.'s statements, such as the color of the rapist's car and the fact that Dows is 510 tall, not 55 as M.A. originally told law enforcement.

In addition to M.A., the state called six other witnesses to testify. Egger waived cross-examination of all but one of the witnesses, John Baptiste, who was a promoter at the concert venue where M.A. was raped. During the cross-examination of Baptiste, Egger was able to elicit admissions that there may have been a number of men who looked like Dows at the concert. Egger was also successful in getting Baptiste to admit that he could not positively identify Dows as definitely being at the concert.

After the state rested, Egger called Dows's sister, mother, and brother to testify. These witnesses provided potential alibis for Dows on the day and evening of the alleged rape. Egger also called Anne Harper, Dows's appointed counsel before Dows hired Egger, who testified about an interview she conducted with M.A. during which M.A. had confused details of her recent rape with a prior rape in 1978.

After a three-day trial, the jury convicted Dows of first degree rape with a deadly weapon. One month later, Egger brought a motion for a new trial based on a statement by M.A. to the prosecutor that she had not immediately recognized Dows at trial. This motion was denied when M.A. assured the court that she recognized Dows by the time she identified him in court. Egger then filed a notice of appeal on Dows's behalf.

In June 1993, almost eighteen months after Dows's trial, two superior court judges in the county where Egger practiced law wrote letters to the Washington State Bar expressing concern over Egger's declining courtroom performance. One judge stated that over the previous few months, Egger appeared confused and slow. On July 2, 1993, Dr. Brad Thomas diagnosed Egger as suffering from Alzheimer's disease. This diagnosis was con-

firmed by two other medical professionals, Dr. Steven Hamilton, and a psychologist, Dr. Susan McCurry. Dr. Thomas stated that, in his opinion, Egger's ability to be an effective attorney would probably have been affected in January 1992 during Dows's trial. By the end of 1993, Egger's dementia and memory loss were readily apparent, and his daughter, Kelly Egger, had been appointed as his legal guardian. Egger died eighteen months after being diagnosed with Alzheimer's disease, three years after Dows's trial.

Previously, in early September of 1993, Egger realized that he could no longer handle Dows's appeal, and an attorney from the Washington Appellate Defenders Association took over the case. On January 6, 1994, the Washington Court of Appeals granted Dows's motion to stay the appeal in order for him to argue a motion for a new trial in the superior court based upon the newly discovered information regarding Egger's illness. The motion for a new trial was heard by Judge Martinez, the same judge who presided at Dows's original rape trial and sentencing. After reviewing the trial transcripts, Judge Martinez denied the motion for a new trial, concluding in an extensive order that, as a factual matter, Dows had failed to establish any significant deficiencies in Egger's trial performance.

Dows appealed the denial of the motion to the Washington Court of Appeals, which affirmed the superior court. The Washington Supreme Court denied Dows's petition for review.

In July 1998, Dows filed this petition for a writ of habeas corpus in the district court. Adopting the report and recommendation of a magistrate judge, the district court concluded that the Washington state trial and appellate courts correctly decided that Egger was not ineffective. The district court denied the petition for habeas corpus, and Dows appeals.

## II

### A. Standard of Review

■ A district court's decision to grant or deny a petition for habeas corpus under 28 U.S.C. § 2254 is reviewed de novo. *McNab v. Kok,* 170 F.3d 1246, 1247 (9th Cir.1999).

Because Dows's petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the AEDPA's provisions apply. *See Jeffries v. Wood,* 114 F.3d 1484 (9th Cir.1997) (en banc). Under the AEDPA, habeas relief can be granted only when the state court adjudication of the merits of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1999). This limited scope of review controls in this case.

### B. Ineffective Assistance of Counsel

■ The Sixth Amendment, as applicable to the states through the Fourteenth Amendment, entitles an accused to the effective assistance of counsel at trial. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ("[T]he right to counsel is the right to the effective assistance of counsel."). Ineffective assistance of counsel claims are analyzed under the framework set out by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which is considered in this circuit to be "clearly established Federal law, as determined by the Supreme Court of the United States" for purposes of 28 U.S.C. § 2254(d) review. *Canales v. Roe,* 151 F.3d 1226, 1229 n. 2 (9th Cir. 1998).

■ Under *Strickland,* we evaluate (1) whether counsel's conduct was defi-

cient—i.e., seen objectively, was out of "the wide range of professionally competent assistance" and, if so, (2) whether it was prejudicial to the defendant—i.e., was there a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 691, 694, 104 S.Ct. 2052; *see also Smith v. Robbins,* —— U.S. ——, ——, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

### 1. Prejudice Per Se

■ Dows's first argument on appeal is that Egger was per se ineffective. Specifically, Dows argues that, because Egger was diagnosed with, and in the advanced stages of, Alzheimer's disease only eighteen months after Dows's rape trial, and because the doctors concluded that the disease probably was present in earlier stages during Dows's trial, we should conclude that Egger was laboring under the disabling effects of Alzheimer's at the time of the trial and infer prejudice. The Court of Appeals of the State of Washington rejected this argument and concluded that "rather than assume that all Alzheimer's victims are incapable of representing clients effectively, we will evaluate Egger's actual conduct at trial." The district court found that this conclusion was not an unreasonable application of Supreme Court precedent and, accordingly, denied Dows's petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254(d)(1) (habeas relief can be granted only when the state court adjudication of the merits of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"). We agree.

■ A lawyer generally is presumed competent, and it is the burden of the accused to overcome this presumption.

*United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The Supreme Court has recognized, however, that prejudice will be presumed in certain limited circumstances such as where an accused is denied counsel at a critical stage of the proceedings, *see Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), where there is an actual conflict of interest between the defendant and his attorney, *see Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), or where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic,* 466 U.S. at 659, 104 S.Ct. 2039.

The mere fact that counsel may have suffered from a mental illness at the time of trial, however, has never been recognized by the Supreme Court as grounds to automatically presume prejudice. Moreover, in *Smith v. Ylst,* 826 F.2d 872, 876 (9th Cir.1987), the Ninth Circuit specifically rejected this basis for presuming prejudice. In rejecting defendant's argument that prejudice should be presumed where counsel may have had a mental illness, the *Ylst* court reasoned that "mental illness is too varied in its symptoms and effects to justify a per se reversal rule without evidence that the attorney's performance fell below the constitutional norm." *Id.*

The reasoning in *Ylst* applies equally well to Dows's case. Egger was diagnosed with Alzheimer's disease approximately eighteen months after Dows's trial. There is no question that by the time Egger was diagnosed, he was in the later stages of the debilitating disease and was not competent to render legal counsel.

However, because of the nature of Alzheimer's disease and its varied manifestations in different individuals, neither Dows nor anyone else can prove what effects, if any, the disease had on Egger's memory and cognitive ability at the time he represented Dows at trial. Therefore, even if Egger had been in the early stages of Alzheimer's at the time of Dows's trial, this alone is not sufficient for a per se

reversal of Dows's conviction by a jury. The Washington Court of Appeals determined that the best indicator of Egger's ability, or lack thereof, to represent Dows at trial was Egger's actual performance. We agree. Were the rule otherwise, trial judges might be compelled to deny defendants' choice of counsel, when they hired old lions of the bar, often to defendants' detriment.

It is not appropriate to presume prejudice in this case and, under the limited scope of review mandated by the AEDPA, we are without the power to do so. As noted above, there is simply no Supreme Court precedent holding that prejudice shall be presumed in circumstances such as those presented by Dows. Hence, in rejecting Dows's argument, the Washington state courts did not reach a result that was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Under the AEDPA, therefore, a per se reversal of Dows's conviction was not permissible, and the district court properly denied Dows's petition for a writ of habeas corpus on this basis.

## 2. Deficient Performance and Resulting Prejudice

The second argument Dows advances on appeal is that, even assuming Egger's counsel was not per se ineffective, there are actual instances in the record of deficient performance by Egger, which prejudiced Dows and, thus, were sufficient to conclude that Egger was "ineffective" under *Strickland*. As with Dows's first argument, the Washington state courts concluded that "[v]iewing the entire record, there is insufficient evidence to show that Egger's representation fell below the standard of objective reasonableness [or] . . . that [without the errors] the result at trial would have been different to a reasonable probability." The district court concurred and concluded that the state courts correctly applied Supreme Court precedent to

the facts in the record. After a careful review of the record, we conclude that the district court was correct.

Dows asserts that Egger's performance was deficient in three significant respects: (1) he failed to adequately prepare for trial; (2) he prevented Dows from testifying; and, (3) he failed to "test" the state's evidence at trial.

■ First, Dows argues that Egger did not adequately prepare because Egger agreed to represent Dows at trial after only three days of preparation, did not interview any witnesses or conduct an investigation, and did not contact a possible alibi witness as suggested by Dows. This argument is not supported by the record. The record makes clear that Egger was familiar with the facts of the case and had a definite defense strategy. For example, Egger told the court which witnesses would be called and what they would testify about, he made very cogent pre-trial arguments about the use of "mugshots" at the trial, and he inquired about counsel's ability to refer to a prior rape of M.A. Moreover, although Egger did not independently interview witnesses, interview statements taken by Anne Harper, Dows's previous attorney, were made available to Egger. His decision not to investigate further was not objectively unreasonable. *See Strickland*, 466 U.S. at 691, 104 S.Ct. 2052 ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.")

Similarly, as to Egger's failure to interview or call an alleged alibi witness, there is no evidence in the record that this witness actually exists, other than from Dows's self-serving affidavit. Moreover, Dows provides no evidence that this witness would have provided helpful testimony for the defense—i.e., Dows has not presented an affidavit from this alleged witness. The facts in the record support the state courts' and the district court's conclusions that Dows did not provide sufficient evidence of Egger's lack of prepara-

tion to prove that Egger was "ineffective" under *Strickland.*

■ Second, Dows argues that Egger denied him his right to testify at trial by threatening to walk out on Dows in the middle of trial if he insisted on testifying. Again, this argument is without factual support. In its order denying Dows a new trial, Judge Martinez noted that at no time during the trial did Dows ever indicate that he wanted to testify or that he was prevented from doing so by counsel. Moreover, Egger had very good reason for suggesting that Dows not testify. Dows had three prior convictions for robbery and assault, which, in all likelihood, would have been admitted to impeach Dows on the stand if he had testified. *Id.* As noted with some irony by the trial court, if Egger *had* allowed Dows to testify under this scenario, that would be definite proof he was suffering from Alzheimer's disease. Dows cannot prove deficient performance or prejudice based upon his failure to testify at trial.

■ Finally, Dows's third argument is that Egger was deficient at trial because he failed to test the state's evidence. Primarily, Dows argues that Egger failed to cross-examine most of the state's witnesses, and that his cross-examination of M.A. was inadequate. Under *Strickland,* counsel's representation must be only objectively reasonable, not flawless or to the highest degree of skill. *Strickland,* 466 U.S. at 688–89, 104 S.Ct. 2052. Moreover, counsel's tactical decisions at trial, such as refraining from cross-examining a particular witness or from asking a particular line of questions, are given great deference and must similarly meet only objectively reasonable standards. *Id.* Thus, here, although Egger might have conducted a more thorough and vigorous examination of the alleged rape victim, the state courts' conclusion that his conduct was objectively

reasonable is not an incorrect application of Supreme Court precedent or an unreasonable determination of fact sufficient to grant a petition for habeas corpus under section 2254. As with his first two arguments, Dows has not produced evidence sufficient to conclude that Egger's performance at trial was deficient and resulted in prejudice as required by *Strickland.*

■ In addition to the three specific areas just discussed, Dows points to numerous instances in the record where Egger may have made minor mistakes or appeared momentarily confused. These instances, however, are taken out of context and do not amount to objectively unreasonable conduct that leads one to the conclusion that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Dows's motion for a new trial based on ineffective assistance of counsel was decided by Judge Martinez, the same judge who presided at Dows's original trial. Judge Martinez was in an unusually good position to evaluate Egger's actual performance and Dows's credibility, and we give his conclusion that Egger's performance was objectively reasonable substantial weight.

### III

In sum, while we do not overlook the serious consequences for Dows of Egger's possible mental incompetence, nor the impact of learning that, subsequent to trial, Egger had been diagnosed with a debilitating disease, we cannot presume prejudice in this case.[2] Moreover, our meticulous review of the record revealed no legally relevant deficiency in Egger's performance or actual prejudice as required under *Strickland.* As stated by the magistrate judge in his report and recommendation,

---

**2.** Based on our experience with this case and the manner in which both we and the Washington State Courts have been able to examine counsel's performance, we are satisfied

that adopting a presumption of prejudice—as compared to conducting a thorough review of the record—is unwarranted.

"[Dows] offers nothing here to establish that the state court's adjudication of [his] claims resulted in a decision that involved an unreasonable application of established federal law, or that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings," as required by 28 U.S.C. § 2254. Accordingly, Dows's petition for a writ of habeas corpus was properly denied by the district court, and we

**AFFIRM.**