**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID MCDONALD HEATH, | No. 10-35262 |
| Petitioner - Appellee, | D.C. No. 6:07-cv-00669-TC |
| v. | |
| JEAN HILL, | MEMORANDUM[*] |
| Respondent - Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, Chief Judge, Presiding

Argued and Submitted August 2, 2010
Seattle, Washington

Before: CANBY, NOONAN and BERZON, Circuit Judges.

Jean Hill, Superintendent of the Eastern Oregon Correctional Institution,

appeals the district court's grant of a writ of habeas corpus to David McDonald

Heath. Heath was convicted by an Oregon state jury on several counts stemming

from two home invasion robberies. Heath was sentenced to over twenty years in

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

prison, all but twenty-seven months of which were attributable to the convictions for the second robbery, which are the subjects of this appeal. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm.

We review de novo the district court's grant of habeas relief to Heath, and "[w]e may affirm the district court's decision on any ground supported by the record, even if it differs from the district court's rationale." *Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004). Because the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs Heath's claim, the writ may be granted only if "the state court adjudication of the merits of a claim '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Dows v. Wood*, 211 F.3d 480, 484 (9th Cir. 2000) (quoting 28 U.S.C. § 2254(d)). If, after applying AEDPA's highly deferential standard of review, we conclude that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, we review Heath's claims de novo. *Frantz v. Hazey*, 533 F.3d 724, 737 (9th Cir. 2008) (en banc).

To prove ineffective assistance of counsel, Heath must show both that

2

counsel's performance was constitutionally deficient and that he was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). And, because *Strickland*'s is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied the standard. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009). Nonetheless, "even a general standard may be applied in an unreasonable manner," and "AEDPA does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.'" *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (quoting *Carey v. Musladin*, 549 U.S. 70, 80 (2006) (Kennedy, J., concurring in judgment)). Cognizant of the "doubly deferential" standard of review, *Knowles*, 129 S. Ct. at 1420, we hold that the state court unreasonably applied *Strickland* in concluding that Heath's trial counsel was constitutionally effective, despite his failure to move to suppress the identification testimony of victim Robert Cameron.[1]

---

[1] Because we conclude that the failure to move to suppress Cameron's identification testimony was a "'single, serious error[']" constituting ineffective assistance of counsel, *Moore v. Czerniak*, 574 F.3d 1092, 1101 (9th Cir. 2009), *cert. granted sub nom. Belleque v. Moore*, 130 S. Ct. 1882 (2010) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986)), we do not reach the question whether, as the district court held, the state court unreasonably applied *Strickland* in resolving several other alleged shortcomings in counsel's representation of Heath.

In an affidavit introduced at Heath's state post-conviction hearing, Heath's trial counsel indicated that, while the "identity of the male robber was the key issue for the jury to decide," he did not move to suppress Cameron's identification testimony because he had "no legal basis" to do so. Counsel explained that "[t]here was no evidence to prove that the detectives used impermissibly suggestive techniques when presenting the photo throwdowns to the victims." We agree with the district court that "counsel had ample reason and legal basis to seek suppression of [] Cameron's identification of [Heath] and that competent counsel would have done so."

First, the state court unreasonably concluded that, in light of the totality of the circumstances, the identification procedures were not impermissibly suggestive. *See Simmons v. United States*, 390 U.S. 377, 383 (1968). Cameron testified that he believed that the detective wanted him to pick "the guy" from the final photo array, even if he was not told which image to select. Correspondingly, the record contains no indication that Cameron was admonished either orally or in writing that he was not required to select an individual from that array. The state also was unable to provide any documentation that the detective who showed Cameron the final array had been trained in non-suggestive procedures. This detective was convinced from the outset that Heath was the male perpetrator; he

4

showed Cameron the final array even after Cameron told him that he had not been able to get a good look at the perpetrator; and he already had shown Cameron two other images of Heath in prior arrays from which Cameron failed to make an identification. *See United States v. Wade*, 388 U.S. 218, 235 (1967) (discussing the danger that when "the police themselves have, in a given case, little or no doubt that the man put up for identification has committed the offense , . . . this persuasion may communicate itself even in a doubtful case to the witness in some way" (citation omitted)); *see also Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) (noting the potential "coercive pressure to make an identification arising from the presence of another").

Moreover, prior to making the identification, Cameron testified before the grand jury that indicted Heath, so he reasonably could have assumed that the indicted individual was in the post-indictment array. *Cf. Simmons*, 390 U.S. at 383 ("The chance of misidentification is . . . heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime."). And because Heath already had been indicted and was in custody, the final photo array was unnecessary: the detective could have arranged a line-up instead, where Heath would have been entitled to the presence of counsel, *Wade*, 388 U.S. at 236-37, and which "is normally more accurate" than a photo

identification in any event, *Simmons*, 390 U.S. at 386 n.6.

The state court did not reach the question of whether the suggestive identification procedure nonetheless was reliable, *see Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)*,* so we review that question de novo. *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing prejudice de novo where state court did not reach that prong of the *Strickland* analysis); *Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) (reviewing de novo whether petitioner waived an alleged conflict of interest where the state court resolved the claim entirely on the merits). We conclude that, "under all the circumstances of this case[,] there is 'a very substantial likelihood of irreparable misidentification.'" *Manson*, 432 U.S. at 116 (quoting *Simmons*, 390 U.S. at 383).

Although the robbers were in Cameron's trailer for an extended period of time, Cameron's opportunity to view the male perpetrator and his degree of attention during the robbery were both low: he acknowledged that he "couldn't get a good look at the suspect's face, and then his eyes swelled shut." Further, while Cameron's description of the male perpetrator matched Heath's characteristics in some respects, Heath's hair was longer than that described by Cameron. Moreover, approximately five months passed between the robbery and Cameron's identification, and Cameron's trial testimony casts significant doubt on his ability

6

to recall the appearance of the male robber after such a delay. Portions of his testimony were at odds with statements he gave to the police in the days following the robbery, and Cameron had difficulty remembering that he had made such statements.

The only factor weighing in favor of a finding of reliability were Cameron's statements that he was certain that he had selected the correct individual. The value of these statements, however, is undermined both by Cameron's previous statement that he did not get a good look at the culprit, as well as the fact that Cameron made the identification and these statements only after viewing the array "for some time." Considering the totality of the circumstances, the reliability of Cameron's identification was far inferior to the identifications upheld by the Supreme Court in *Manson*, 432 U.S. at 114-16*,* and *Biggers*, 409 U.S. at 382-83, and did not in this case "outweigh[] . . . the corrupting effect of the challenged identification itself." *Manson*, 432 U.S. at 116.

Therefore, counsel's conclusion that he had "no legal basis" to move to suppress Cameron's identification testimony was unreasonable. Further, counsel advanced no strategic reason for not moving to suppress Cameron's identifications of Heath, and no such strategic reason is apparent to us. *See Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986); *Moore v. Czerniak*, 574 F.3d 1092, 1107 n.17

7

(9th Cir. 2009), *cert. granted sub nom. Belleque v. Moore*, 130 S. Ct. 1882 (2010) ("Although a strategic reason may not be necessary for failing to make a motion that has no merit, it is certainly necessary when counsel fails to make a meritorious motion."). Because the identification of the male culprit in the second robbery was the primary issue at Heath's trial, we hold that counsel was deficient under *Strickland*'s first prong in failing to move to suppress Cameron's identification testimony. The state court unreasonably applied *Strickland* in concluding otherwise.

The state court also unreasonably concluded that Heath was not prejudiced by counsel's failure to move to suppress the identifications. For the same reasons highlighted above, a motion to suppress Cameron's identification testimony would have succeeded, had it been filed. *See Kimmelman*, 477 U.S. at 382. Further, "there is a reasonable probability that the successful motion would have affected the outcome." *Van Tran v. Lindsey*, 212 F.3d 1143, 1156 (9th Cir. 2000), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003) (citing *Strickland*, 466 U.S. at 375). Although Heath did not dispute his participation in the first robbery, he denied involvement in the second robbery, which is at issue here. Because the other evidence linking Heath to the second robbery was weak, the identification evidence was critical to the government's case. And without

8

Cameron's identification testimony, the identity evidence would have been limited to (1) the female victim's in-court identification of Heath, which even the state court described as "extremely weak" and "tentative," and (2) the victims' descriptions of the male perpetrator, which lacked detail and did not fully match Heath's characteristics.

In addition, counsel's challenge at trial to the identification evidence was insufficient to overcome his failure to move to suppress that evidence. Counsel's cross-examination of Cameron on his ability to see his attacker was brief and elicited only equivocal responses, in part due to counsel's failure adequately to investigate Cameron's vision and injuries or the conditions of the crime scene prior to trial.[2] Counsel's reference to these equivocal responses during closing argument was similarly ineffective. The state court therefore unreasonably concluded that Heath was not prejudiced by counsel's failure to move to suppress Cameron's identification testimony.

---

[2] To the extent that the state court found counsel's cross-examination of Cameron on his vision adequate on the basis of the court's understanding that Cameron's uncorrected vision was 20/40, the court unreasonably determined the facts in light of the evidence before it. *See* 28 U.S.C. § 2254(d)(2). The record shows that Cameron's *corrected* vision was 20/40 in his best eye, and Cameron testified that he was not sure that he was wearing his glasses during the robbery.

The district court's judgment granting a writ of habeas corpus to Heath is

**AFFIRMED.**