
**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

KEVIN BENNETT,

               Petitioner - Appellant,

  v.

MATTHEW CATE,[*]

               Respondent - Appellee.

No. 08-55700

D.C. No. 2:05-CV-07953- JFW (SS)

MEMORANDUM[**]

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted December 7, 2010
Pasadena, California

Before: TROTT and WARDLAW, Circuit Judges, and BREWSTER, Senior District Judge.[***]

---

[*]     Respondent-Appellee Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation, has been substituted for his predecessor, James Tilton, pursuant to Federal Rule of Appellate Procedure 43(c)(2).

[**]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[***]     The Honorable Rudi M. Brewster, Senior United States District Judge for the Southern District of California, sitting by designation.

Kevin Bennett, a California state prisoner serving a term of 51 years to life following his jury conviction of second degree murder, appeals the denial of his habeas petition. 28 U.S.C. § 2254. We certified two issues for appeal and appointed counsel to assist him. We have jurisdiction under 28 U.S.C. § 1291and § 2253(a). We conclude that the attorney's incompetent performance seriously undermines the reliability of the verdict. *Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). We reverse and remand with instructions to grant a conditional writ of habeas corpus. Because we grant relief on the first issue, we do not reach the second issue.

A federal court may grant habeas relief only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 407 (2000). The Court reviews *de novo* the District Court's decision to grant or deny a writ of habeas corpus. *Lewis v. Mayle*, 391 F.3d 989, 995 (9th Cir. 2004).

The law governing the basic function of a criminal defense attorney to investigate the facts is well established. *Wiggins v. Smith*, 539 U.S. 510, 521-22,

2

525 (2003) (holding that counsel must investigate to make an informed decision about strategy); *Williams*, 529 U.S. at 390; *Strickland*, 466 U.S. at 687, 690-91; *Phillips v. Woodford*, 267 F.3d 966, 978 (9th Cir. 2001). "[C]ounsel must, at a minimum, *conduct a reasonable investigation* enabling him to make informed decisions about how best to represent his client." *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

The attorney's performance was objectively unreasonable. He failed to read his own case file, as the blood evidence that bolstered Bennett's self-defense theory was in plain view in several police reports. Detective Tom Snyder drew a diagram of the backyard area that indicated blood drops on and near the concrete patio. Other officers mentioned the blood on and near the patio in their written reports. Detective Dossey recorded Officer Linn's observation of "small blood droplets in the grass east of the patio." Detective H. Rodriguez observed "additional drops of blood on cement porch and grass approximately 10 feet east of the rear door to the residence. It appears the drops were leading in a southeast direction."

The adversarial system does not function when defense counsel is unaware of the core facts of the case. Counsel's failure to notice blood evidence in several police reports was unreasonable, especially in light of Bennett's version of the events. *Strickland*, 466 U.S. at 690-91 (holding that defendant's statements to

3

counsel are critical in determining whether further investigation is necessary). The evidence counsel failed to present would have substantially bolstered Bennett's defense. Bennett testified that the victim ambushed him in the darkness just as Bennett stepped out of the house. Yet counsel failed to question the police officers about the blood on the patio and failed to consult with an expert (for example, to substantiate the officer's observation that the blood drops were leading toward the backyard area). When the prosecutor questioned a police officer about blood on the wall in the area across the yard where the victim fell, counsel was unprepared to ask any follow-up questions. The attorney's performance was deficient.

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *id.* at 692-93 ("[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."); *Alcala v. Woodford*, 334 F.3d 862, 873 (9th Cir. 2003).

We have no difficulty finding that the deficient performance was prejudicial. As defense counsel stated during the motion for a new trial, the "whole case turned on" whether the blood evidence substantiated Bennett's testimony. *See Moore v.*

4

*Czerniak*, 574 F.3d 1092, 1108 (9th Cir. 2009). Other evidence was consistent with Bennett's explanation; for example, the single knife wound to the front of the victim's chest and Sharon Kitagawa's testimony. The prosecutor relied on the chase as described by Paul Kitagawa's testimony (though the police report of his interview on the night of the stabbing did not contain that information) and the blood stains found on the wall on the far side of the yard. The prosecutor argued that Bennett, not Paul Kitagawa, lied on the stand.

The jury asked questions about Bennett's version of the events that revealed the critical importance of the blood evidence. They asked to rehear the testimony of Paul and Sharon; they asked "where was the body found – exact location in back yard"; and "were there any blood stains on the patio? If so, where!" *Frantz v. Hazey*, 533 F.3d 724, 742 (9th Cir. 2008) (en banc) (when "jury is troubled enough to seek advice" the jury will seriously consider the trial court's response to a question). Here, the jury was misled by the response to their inquiry.[1] Counsel's

_____

[1]The trial judge asked counsel "[d]o we agree that there was no testimony as to any blood found on the patio?" and both attorneys answered "yes." Then the judge restated "there was no blood?" and defense counsel added "or anywhere else on the patio." When the judge repeated the jury question "was there any blood found on the back – on the patio," defense counsel said "I would stipulate that." While the trial court correctly informed the jury there was no *testimony* about blood on the patio ("nothing testified to about blood on patio"), the defense attorney's failure to investigate critical facts is apparent.

error and lack of preparation directly impacted the jury's deliberations. *See Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946) ("When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy.").

Because Bennett took the stand, it was critical to have any available objective physical and forensic evidence to support his version. *Riley v. Payne*, 352 F.3d 1313, 1319-20 (9th Cir. 2003) (finding ineffective assistance of counsel when attorney failed to investigate client's self-defense explanation); *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999) (when attorney failed to investigate, "the jury was left to decide, without benefit of supporting or corroborative evidence," the credibility of trial testimony); *Brown v. Myers*, 137 F.3d 1154, 1157-58 (9th Cir. 1998) ("[W]ithout any corroborating witnesses, [petitioner's] bare testimony left him without any effective defense.").

The jury could have convicted Bennett of a lesser included offense of manslaughter or the trial court could have imposed a lower sentence. *Daniels v. Woodford*, 428 F.3d 1181, 1209 (9th Cir. 2005). Certainly, there are problems with Bennett's case, but these factual problems do not excuse counsel's failure to read the police reports and look at diagrams that were the foundation of his client's defenses of self-defense and by accident. Bennett is not entitled to a perfect trial,

6

but he is entitled to more than he received. *Riley*, 352 F.3d at 1325 (granting habeas relief under *Strickland* because petitioner "did not get a fair shake from the legal system"); *Alcala*, 334 F.3d at 872-74.

The state court's determination was an unreasonable application of the *Strickland* standard. *Riley*, 352 F.3d at 1322-25. Bennett has established he was deprived of his Sixth Amendment right to counsel.

On remand, the district court shall enter judgment granting a conditional writ of habeas corpus directing that Bennett be released from custody unless the State of California begins trial proceedings against Bennett within a reasonable time as set by the district court.

REVERSED AND REMANDED.