Michael Anthony LOCKHART,
Petitioner–Appellant,

v.

C.A. TERHUNE,* Director, California Department of Corrections; Gail Lewis, Warden, Respondents–Appellees.

No. 99–16010.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 2001

Filed March 14, 2001

Amended April 27, 2001

---

* C.A. Terhune is substituted for his predecessor, Thomas M. Maddock, as Director of the California Department of Corrections. Fed. R.App. P. 43(c)(2).

Albert J. Kutchins, Berkeley, California, for the petitioner-appellant.

Amy Haddix and Clifford K. Thompson, Jr., Office of the California Attorney General, San Francisco, California, for the respondents-appellees.

Before: GOODWIN, GRABER, and PAEZ, Circuit Judges.

## ORDER AND AMENDED OPINION

PAEZ, Circuit Judge:

### ORDER

Our opinion in *Lockhart v. Terhune*, 243 F.3d 1130 (9th Cir.2001), is amended, and the Clerk is ordered to file the attached amended opinion.

With the opinion thus amended, the panel has voted unanimously to deny the petition for rehearing. Judges Graber and Paez have voted to deny the petition for

rehearing en banc, and Judge Goodwin recommended denial.

The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The petition for rehearing is DENIED and the petition for rehearing en banc is DENIED.

## OPINION

 A criminal defendant's Sixth Amendment right to counsel includes the right to be represented by an attorney with undivided loyalty. *See Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). This guarantee is so important that, unlike with other Sixth Amendment claims, when a defendant alleges an unconstitutional actual conflict of interest, "prejudice must be presumed," *Delgado v. Lewis*, 223 F.3d 976, 981 (9th Cir.2000) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and *Flanagan v. United States*, 465 U.S. 259, 268, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984)), and harmless error analysis does not apply. *United States v. Allen*, 831 F.2d 1487, 1494–95 (9th Cir. 1987) (citing *Cuyler*, 446 U.S. at 349, 100 S.Ct. 1708).

At his trial on charges of murder and attempted murder, prosecutors presented evidence that Petitioner Michael Lockhart had committed a second, earlier murder. Lockhart's appointed counsel was also representing another man who was implicated

in that earlier homicide. On direct appeal and in his federal petition for a writ of habeas corpus, Lockhart alleged that this dual representation presented a conflict of interest that infringed his Sixth Amendment right to counsel. Both the state appellate court and the district court rejected Lockhart's claim. On appeal from the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254, we have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We hold that, because trial counsel had an actual conflict of interest that adversely affected his representation of Lockhart, Lockhart's Sixth Amendment right to counsel was violated. We reverse and remand.

## I

 Lockhart was convicted in the California Superior Court for murder and attempted murder in the May 31, 1990, shooting of two men, Roderick "Roger" Lane and Herbert "Legs" Jamerson. Lane was killed. Lockhart was also implicated in, although not charged with, the May 7, 1990, shooting death of a third man, Terry Cooper.[1] The prosecution offered evidence of Lockhart's alleged involvement in the Cooper killing in order to establish Lockhart's identity as the perpetrator in the Lane and Jamerson shooting.

A criminalist at the Oakland (California) Police Department had concluded, from analysis of shell casings found at the scenes, that the same guns were used in both the May 7 and May 31 incidents. He also compared these casings with others test-fired from two weapons subsequently

---

1. A detailed statement of the shootings of Lane, Jamerson, and Cooper is not necessary to our resolution of Lockhart's Sixth Amendment claim. A complete explication of the facts can be found in the district court's order denying Lockhart's petition, *Lockhart v. Maddock*, No. C97–1447 MJJ, 1999 WL 179688 (N.D.Cal. Mar.29, 1999) (hereinafter *Lockhart II*). The district court's factual findings are

reviewed for clear error. *Lopez v. Thompson*, 202 F.3d 1110, 1116 (9th Cir.2000) (en banc). We note that the district court adopted the factual findings of the California Court of Appeal's unpublished decision upholding Lockhart's conviction on direct appeal. 1999 WL 179688, at *1 n. 1. The state court's determination of the facts is presumed to be correct. 28 U.S.C. § 2254(e)(1).

seized by the police. The expert determined that the seized weapons were the ones used in both shootings. One of the guns, a Glock .9 millimeter pistol, had been seized in a search of a residence occupied by Larry Galbert.

On May 10, 1990, an anonymous female caller informed the Oakland Police Department that two of the shooters who "killed Terry [Cooper] on Seminary" were "Henry Scott and Larry Galbert." And on September 12, 1990, an informant named Norbert Bluitt told the department that "Larry Galbert, Henry Scott, and Tony Penniman were the men who shot and killed Terron Cooper." Attorney Richard Hove was appointed to represent Galbert when he was charged with possession of drugs and of the Glock pistol. Galbert was not charged with the Cooper killing. Several months later, Hove was appointed to represent Lockhart when he was charged with murder and attempted murder in the shooting of Lane and Jamerson.

According to the district court, after being appointed to represent both Lockhart and Galbert,

> Hove learned that the Glock pistol found at Galbert's residence was one of the weapons used to kill both Lane and Cooper; that the police had received information from two informants implicating Galbert in the Cooper homicide; and that although Galbert's picture had been included in a photographic lineup a defense investigator showed eyewitnesses to both the Cooper and Lane homicides,

no one identified Galbert from this photographic spread. Upon learning this information, Hove had both Lockhart and Galbert execute waivers of conflict of interest.

*Lockhart II,* 1999 WL 179688, at *8 n. 7. That is, the district court found that Hove knew that Galbert had been implicated in the May 7, 1990, killing of Cooper before obtaining the waivers. Lockhart's waiver read as follows:

> I, MICHAEL LOCKKART [sic] acknowledge that I have been advised by my attorney RICHARD E. HOVE that there exists a conflicts [sic] of interest in Mr. Hove's representation of me and another individual whom he represents name [sic] LARRY GALBERT. I have been adviced [sic] by Mr. Hove that I have the right to have counsel of my own choice who does not represent both me or [sic] Mr. Galbert.
>
> Having been advised of the above and realizing the nature and affect [sic] of the conflict it is my choice and request that Mr. Hove continue to represent me. I realize I may have the benefit of the advice of separate counsel in deciding to waive any conflicts of interest and has [sic] chosen not to seek such. I further acknowledge that this decision is made by me freely, vonteerly [sic] and with full knowledge of its potential consequence.

*Id.* at *9.

At a pretrial hearing, the court questioned both Lockhart and Hove about the conflict.[2] In response to the court's ques-

---

2. The exchange was as follows:

> The Court: The conflict is based upon Mr. Hove's representational services provided to Mr. Galbert, who is in possession of the gun, and the representational services provided to Mr. Lockhart. Was there any other factual basis for the conflict?
>
> Mr. Hove: I think that's the sole basis for the conflict....

> The Court: And there is no dispute that that gun was the last gun used in the matter that's before the Court at this point?
>
> Mr. Hove: Well, it's not a matter there is no dispute. It's more in the sense, Your Honor, that there would be evidence that showed that that gun was in fact ballistically the weapon that was used....
>
> The Court:.... Mr. Hove, have you explained or discussed with your client the po-

tions, Hove asserted that Galbert's alleged possession of the gun used in the shootings was "the sole basis for the conflict." *Supra* note 2. After also questioning Lockhart, the trial court accepted his waiver, "finding that he has discussed this matter with his attorney and he feels that he has been made aware of the dangers and possible drawbacks." 1999 WL 179688, at *10. Hove did not, however, disclose to either Lockhart or the court that Galbert had been identified by two people as one of the shooters in the May 7 Cooper murder. There is no evidence that Hove ever told Lockhart that he had decided not to pursue the allegations against Galbert as part of Lockhart's defense.

After his sentencing, Lockhart appealed his conviction to the California Court of Appeal, asserting, *inter alia*, that trial counsel's conflict of interest deprived him of his federally guaranteed right to effective assistance of counsel. In an unpublished decision filed on July 14, 1994, the court affirmed Lockhart's conviction. *People v. Lockhart*, No. A056404, slip op. (Cal.Ct.App. July 14, 1994) (hereinafter *Lockhart I*). On July 29, 1994, Lockhart filed an original Petition for Writ of Habeas Corpus in the California Court of Ap-

peal, asserting two additional claims, which we do not address here. The court summarily denied the petition on August 22, 1994. His subsequent habeas corpus petition to the California Supreme Court was denied on November 2, 1994.[3]

On April 23, 1997, Lockhart filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the Northern District of California. The district court heard argument on Lockhart's petition, then denied it on March 29, 1999. Lockhart timely appeals.[4]

## II

■ Lockhart's petition was filed after April 24, 1996, and is therefore subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). We review the district court's decision to deny a 28 U.S.C. § 2254 habeas petition de novo. *Bribiesca v. Galaza*, 215 F.3d 1015, 1018 (9th Cir.2000). But under AEDPA, we may grant habeas relief to a person in state custody only if the claimed constitutional error "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as deter-

---

tential drawbacks of your joint representation of his interests in connection with this particular matter and the interests of Mr. Galbert?

Mr. Hove: Yes, I have. Michael, you and I have discussed the fact that I represent both you and Larry Galbert?

Defendant: (Nods in the affirmative)

Mr. Hove: And during the course of that discussion we have discussed what might be considered the pros and cons of me representing both of you, possible benefits as well as possible drawbacks of that; is that correct?

Defendant: Yeah.

Mr. Hove: And do you feel that you and I have discussed that fully so you're aware of what problems may present to you in my representing Mr. Galbert as well as you?

Defendant: Yes. . . .

The Court: . . . . And you feel you have been made aware of the dangers and possible con-

sequences of his representing you as well as Mr. Galbert?

Defendant: Yes.

3. Respondent does not dispute that Lockhart has exhausted his state court remedies as required by 28 U.S.C. § 2254(b)(1)(A).

4. The district court issued a certificate of appealability on May 14, 1999, finding that (1) the trial counsel's conflict of interest, (2) the alleged failure by the prosecution to disclose exculpatory evidence, and (3) the allegedly ineffective assistance of counsel at trial raised substantial constitutional issues. 28 U.S.C. § 2253(c)(2). Because we reverse based on the conflict of interest, we do not reach the other two issues.

mined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As we recently summarized, in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000),

> [t]he Supreme Court confirmed that the two clauses ["contrary to" and "unreasonable application of"—]have independent meanings, but went on to hold that the two clauses apply both to questions of law and mixed questions of law and fact. *See Williams*, 120 S.Ct. at 1519–21. The "contrary to" prong applies to a state court "conclusion opposite to that reached by th[e] [Supreme] Court on a question of law" as well as when "the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Id.* at 1519–20. The "unreasonable application of" prong applies at least to "[a] state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 1520–21.

*Baker v. City of Blaine*, 221 F.3d 1108, 1110 n. 2 (9th Cir.2000). "[W]e still look to our own law for its persuasive authority in applying Supreme Court law.... 'Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an "unreasonable application" of Supreme Court law....'" *Van Tran v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir.2000) (quoting *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir.1999)).

The California appellate court's unpublished decision in Lockhart's direct appeal addresses his claim that he was deprived of his right to effective assistance of counsel because of his attorney's conflict of interest. That claim is therefore subject to the standard articulated in *Williams* and our subsequent cases.

## III

■■■ We summarized the Supreme Court's case law regarding an allegation of unconstitutional attorney conflict of interest in our decision in *Allen*, 831 F.2d at 1494–95:

> Under the [S]ixth [A]mendment, a criminal defendant has the right to be represented by counsel whose loyalties are undivided. *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981).... Although joint representation is not per se violative of the [S]ixth [A]mendment's guarantee of effective assistance of counsel, *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), "a possible conflict [of interest] inheres in almost every instance of multiple representation." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)....
>
> .... Trial courts presented with a conflict have an affirmative duty to protect a defendant's rights, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).... In every case of joint representation, if the court "knows or reasonably should know that a particular conflict exists" it must initiate an inquiry about that conflict. [*Cuyler*], 446 U.S. at 347, 100 S.Ct. 1708. Of course, a defendant may waive his right to the assistance of an attorney who is unhindered by conflicts, *Holloway*, 435 U.S. at 483 n. 5, 98 S.Ct. 1173, provided the waiver is given knowingly and intelligently. *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
>
> Unconstitutional multiple representation "is never harmless error." [*Cuyler*], 446 U.S. at 349, 100 S.Ct. 1708. If a defendant fails to object to representation by an attorney with a conflict, but shows on appeal that "an actual conflict

of interest adversely affected his lawyer's performance," reversal is required. *Id.* at 348, 100 S.Ct. 1708. . . . Counsel must have "actively represented conflicting interests," [*id.*] at 350, 100 S.Ct. 1708, and the conflict must have "actually affected the adequacy of his representation." *Id.* at 349, 100 S.Ct. 1708. . . . [T]he defendant "need not demonstrate prejudice in order to obtain relief." *Id.* at 349–50, 100 S.Ct. 1708. . . .

*See also United States v. Christakis,* 238 F.3d 1164 (9th Cir.2001) (citing *Mannhalt v. Reed,* 847 F.2d 576, 579 (9th Cir.1988), and *Cuyler,* 446 U.S. at 350, 100 S.Ct. 1708). We now turn to the question whether the state court's decision to uphold Lockhart's conviction despite the alleged conflict of interest is an unreasonable application of, or contrary to, the Supreme Court's prior decisions.

### A. *Actual Conflict*

■ When a defendant raises the "right to conflict-free counsel for the first time on appeal[, he] 'must demonstrate that an actual conflict adversely affected his lawyer's performance.'" *United States v. Martinez,* 143 F.3d 1266, 1270 (9th Cir. 1998) (quoting *United States v. Mett,* 65 F.3d 1531, 1534 (9th Cir.1995), and *Cuyler,* 446 U.S. at 348, 100 S.Ct. 1708). In considering this question, we find that the California appellate court applied a standard contrary to the one required by clearly established federal law and that, using the proper standard, Lockhart has met his burden.

The California Court of Appeal rejected Lockhart's claim of ineffective assistance of counsel because, "[u]nder California law, a potential conflict of interest will not support reversal unless the defendant can prove that the alleged conflict prejudicially affected defense counsel's representation. . . . [E]ven if Galbert was involved in

either [of] the . . . homicides, this would have no necessary effect on appellant's defense." *Lockhart I,* slip op. at 27–28 (citations omitted) (emphasis added). The court did not consider the applicable federal law. Therefore, we ask whether California law, as explained by the state court of appeal in this case, is "contrary to" clearly established federal law in this area. We determine that it is.

■ First, we have no question that Lockhart has established an "actual conflict."[5] Hove simultaneously represented two clients who were implicated in the same murder. An actual conflict exists when a defendant is placed "at odds with co-defendants who were in fact more culpable." *Allen,* 831 F.2d at 1496. Here, although Galbert and Lockhart were not co-defendants, the allegation that Galbert had actually shot Cooper suggested that Galbert was in fact more culpable than Lockhart. It was in Galbert's interest to have Lockhart convicted because of the connection between the two killings. Hove could not fairly represent those conflicting interests. *See also Christakis,* 238 F.3d 1164, (holding that defense counsel represents conflicting interests when one client possesses information that he could use to implicate the other client in exchange for a reduced sentence).

■ Second, Lockhart has established that the actual conflict adversely affected his defense. The standard applied to this question by the state court was "contrary to . . . clearly established Federal law." 28 U.S.C. § 2254(d)(1). The state appellate court required Lockhart to show that the conflict of interest "prejudicially affected" his representation. *Lockhart I,* slip op. at 27–28. By contrast, the Supreme Court has held that "prejudice must be presumed in cases where a

---

5. Neither the state appellate court nor the district court addressed this question.

defendant can show that there is an actual conflict of interest in an attorney's representation of a client." *Delgado,* 223 F.3d at 981 (citing *Cuyler,* 446 U.S. at 350, 100 S.Ct. 1708, and *Flanagan,* 465 U.S. at 268, 104 S.Ct. 1051). Under Supreme Court precedent, Lockhart needs only to meet the lower standard of showing that "the attorney's behavior seems to have been influenced" by the conflict. *Sanders v. Ratelle,* 21 F.3d 1446, 1452 (9th Cir.1994). "This showing need not rise to the level of actual prejudice.... Nonetheless, it remains a substantial hurdle." *Maiden v. Bunnell,* 35 F.3d 477, 481 (9th Cir.1994).

The state appellate court determined that Lockhart could not show prejudice "[b]ecause proof of Galbert's guilt would not exculpate" him. *Lockhart I,* slip op. at 28. This conclusion, too, is contrary to clearly established federal law. The Supreme Court has held that a conflict gives rise to an adverse effect when it " 'prevent[s] an attorney ... from arguing ... the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.' " *Wheat v. United States,* 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (quoting *Holloway,* 435 U.S. at 490, 98 S.Ct. 1173). *Wheat* describes this case precisely, as Hove was unable to emphasize Galbert's involvement in the Cooper homicide in order to minimize Lockhart's.

▇▇▇▇ The central question that we consider in assessing a conflict's adverse effect is " 'what the advocate [found] himself compelled to refrain from doing' " because of the conflict. *Allen,* 831 F.2d at 1497 (quoting *Holloway,* 435 U.S. at 490, 98 S.Ct. 1173). Hove " 'suspected or knew' that he had [an] unindicted client[ ] who w[as] involved" in the crime. *Id.* Contrary to the suggestion in our recent decision in

*Bragg v. Galaza,* 242 F.3d 1082 (9th Cir. 2001), Lockhart need not prove that the actual conflict "was the cause of any inactions" by Hove. Rather, we have repeatedly emphasized, Lockhart needs only to show "that some effect on counsel's handling of particular aspects of the trial was 'likely.' " *United States v. Miskinis,* 966 F.2d 1263, 1268 (9th Cir.1992) (citing *Mannhalt v. Reed,* 847 F.2d 576, 583 (9th Cir.1988)); *see also Sanders v. Ratelle,* 21 F.3d 1446, 1452 (9th Cir.1994).[6] Significantly for our consideration of this case under AEDPA, the Supreme Court has not demanded any greater proof than we have. *See, e.g., Wheat,* 486 U.S. at 164, 108 S.Ct. 1692 ("The Government might readily have tied certain deliveries of marijuana by Bravo to petitioner, necessitating vigorous cross-examination of Bravo by petitioner's counsel. Iredale, because of his prior representation of Bravo, would have been unable ethically to provide that cross-examination."); *Holloway,* 435 U.S. at 490, 98 S.Ct. 1173 ("[I]t may well have precluded defense counsel ... from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution...."). This standard of proof makes sense, because Hove's knowledge puts Lockhart "in an impossible position. He cannot know or prove to a reviewing court what his lawyer[ ] had learned from [Galbert], or how that information caused counsel to act or refrain from acting in certain ways." *Allen,* 831 F.2d at 1497.

As in *Miskinis,* Lockhart identifies a number of actions and inactions that adversely affected his defense and that "likely" can be attributed to Hove's conflict of interest. *Cf. Sanders,* 21 F.3d at 1453 ("Such behavior could have stemmed from the" conflict of interest.). Hove did not interview or subpoena the identified tip-

---

6. We note that the *Bragg* court did not fully explore the question of adverse effect (and, in fact, cited no cases) because it already had

held that Bragg failed to satisfy the "actual conflict" prong of the test.

ster; nor did he investigate the unknown tipster. He did not inform the jury that Galbert, more than being found with one of the weapons, actually had been accused of shooting Cooper. *Cf. Miskinis,* 966 F.2d at 1268 ("[T]here are a number of areas in which an actual conflict of interest between Miskinis and Mitchell likely would have affected Mitchell's advocacy.") (emphasis added). Galbert's involvement was one obvious defense to the allegation that Lockhart had killed Cooper. Without evidence of the Cooper killing, the prosecution's case against Lockhart for the May 31, 1990, shooting would have been significantly weaker. Because of the conflict of interest, however, Hove was unable to exploit this defense fully. We can discern no tactical justification for Hove's decisions and, therefore, conclude that he was likely motivated by a desire to protect his other client. *See Sanders,* 21 F.3d at 1455. This is sufficient to satisfy the "adverse effect" prong of the conflict of interest test. The state appellate court's decision that Lockhart did not meet his burden was contrary to clearly established federal law.

### B. *Waiver*

 Having determined that Lockhart would otherwise be entitled to a writ of habeas corpus on his Sixth Amendment claim, we next address the state's contention that Lockhart waived his right to conflict-free counsel. To be valid, his waiver must have been given knowingly and intelligently. *See Edwards,* 451 U.S. at 482, 101 S.Ct. 1880. On appeal, the California appellate court found that Lockhart's waiver "fully complied" with the constitutional guarantee of effective assistance of counsel. *Lockhart I,* slip op. at 23–27. We hold that the state court, relying on Cali-

fornia law, *id.,* slip op. at 25–26, "correctly identifie[d] the governing legal rule[s], but applie[d] [them] unreasonably to the facts of" Lockhart's case. *Williams,* 529 U.S. at 407, 120 S.Ct. 1495.[7]

The Supreme Court has instructed that we must "indulge every reasonable presumption against the waiver of fundamental rights." *Glasser,* 315 U.S. at 70, 62 S.Ct. 457, quoted in *Allen,* 831 F.2d at 1498. Furthermore, the Court has suggested that we should treat with skepticism waivers that are obtained swiftly. *See Wheat,* 486 U.S. at 163, 108 S.Ct. 1692 ("Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them."). And, indeed, it is clear from the record that Hove misled Lockhart and the trial court. *Cf. Allen,* 831 F.2d at 1500–02.

 For a waiver to be knowing and intelligent, the defendant must have been "sufficiently informed of the consequences of his choice." *Evans v. Raines,* 705 F.2d 1479, 1480 (9th Cir.1983). Like other circuits, "[w]e do not require that a defendant predict that particular dilemmas will present themselves, but we do require that a defendant know about all the risks that are likely to develop." *Allen,* 831 F.2d at 1500 (emphasis added) (citing *United States v. Curcio,* 680 F.2d 881, 888 (2d Cir.1982), and *United States v. Agosto,* 675 F.2d 965, 976–77 (8th Cir.1982) (holding that waiver was ineffective when the defendant was informed of possible conflict due to attorney's prior representation of codefendant and told that conflict may arise from prior confidential communications, but not told that conflict may arise from attorney's con-

---

7. The California appellate court relied almost entirely on state-law grounds in finding Lockhart's waiver to be knowing and voluntary. The state standards are not contrary to Federal law. *Compare Lockhart I,* slip op. at 25–26

(citing *People v. Bonin,* 47 Cal.3d 808, 254 Cal.Rptr. 298, 765 P.2d 460, 476 (1989)), *with Allen,* 831 F.2d at 1498–1502. Therefore, the question is whether they were applied unreasonably.

tinued loyalty to codefendant)). The defendant's choice to waive his Sixth Amendment's rights must be "made with eyes open." *United States v. Farhad*, 190 F.3d 1097, 1099 (9th Cir.1999). Because Lockhart did not know that Galbert had actually been accused of the Cooper murder by two people Lockhart could not have known the risk that Hove's inability to target Galbert as an alternative suspect actually posed to his defense. An accusation that Galbert, who was found in possession of one of the weapons, had shot Cooper would be much more persuasive if two police informants had fingered him. Lockhart did not know what he was giving up by retaining Hove's counsel.

 We must "ascertain with certainty" that Lockhart knowingly and intelligently waived his right to conflict-free counsel, *Maiden*, 35 F.3d at 481 n. 5 (citing *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)), by "focus[ing] on what the defendant understood." *United States v. Keen*, 104 F.3d 1111, 1114 (9th Cir.1996). The record in this case "give[s] little reason to believe that [Lockhart] was adequately informed of the significance of the conflict." *Allen*, 831 F.2d at 1500. We cannot expect Lockhart to assume that Galbert also had been implicated in the crime and to know, having only been told that Galbert stood accused of possession of the murder weapon, that Hove would be unable to investigate Galbert or accuse him of the May 7, 1990, shooting of Terry Cooper. *Cf. id.* ("[T]he only potential conflict mentioned in the waiver letter drafted by [attorney] Oteri is that which might develop if any defendant wished to cooperate with the government. There is no mention of the particular risks inherent in group plea bargaining, the particular risks of a culpability list, or the firm's ongoing obligations to [other clients]."); *Mannhalt*, 847 F.2d at 580–81 (recognizing the difference between alerting a defendant to a situation that could give rise to a conflict of interest and "warn[ing][him] of the dangers of continued representation").

This case is distinguishable from those cases in which we have found a knowing and intelligent waiver. *See, e.g., Garcia*, 33 F.3d at 1196–97 (finding waiver effective after the defendant explained his concern that his attorney, who had accepted a job with the district attorney's office, would "strike a deal or ... is palsy-walsy with ... the district attorney" and received a continuance to seek outside advice about the conflict); *United States v. Lightbourne*, 104 F.3d 1172, 1176 (9th Cir. 1997) (holding that husband and wife waived right to conflict-free counsel after being told that their attorney would not be able to discuss with either of them the possibility of cooperating with the government, that the attorney could not make a motion to waive marital privilege, and that neither could negotiate a plea). Here, in contrast, there is no evidence that Lockhart was made aware of any of the specific ramifications of his waiver.

Therefore, we hold that Lockhart's waiver of his attorney's conflict of interest was not knowing and intelligent. The state court's conclusion to the contrary was an unreasonable application of Supreme Court precedent.

Because Lockhart has demonstrated a violation of his Sixth Amendment right to counsel and because he did not effectively waive that claim, we reverse the district court's denial of Lockhart's petition for a writ of habeas corpus. We remand to the district court with instructions to grant a writ of habeas corpus for Lockhart unless the state court grants Lockhart a new trial within a reasonable time.

REVERSED and REMANDED.