**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVE HOUSTON,
　　　　　　*Petitioner-Appellant,*

　　　　　　v.

JAMES M. SCHOMIG,
　　　　　　*Respondent-Appellee.*

No. 06-15523

D.C. No.
CV-04-00785-RLH

OPINION

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, District Judge, Presiding

Argued and Submitted
February 14, 2008—San Francisco, California

Filed July 22, 2008

Before: William C. Canby, Jr., Milan D. Smith, Jr.,
Circuit Judges, and Stephen G. Larson, District Judge.*

Opinion by Judge Larson;
Partial Concurrence and Partial Dissent by
Judge Milan D. Smith, Jr.

---

*The Honorable Stephen G. Larson, United States District Judge for the
Central District of California, sitting by designation.

**COUNSEL**

Anne R. Traum, Assistant Federal Public Defender, Las Vegas, Nevada, for the petitioner-appellant.

Rene L. Hulse, Las Vegas, Nevada, Senior Deputy Attorney General, for the respondent-appellee.

## OPINION

LARSON, District Judge:

Steve Houston, a Nevada state prisoner, appeals from the district court's judgment denying his petition for habeas corpus pursuant to 28 U.S.C. § 2254. Houston's habeas petition challenges his 2000 jury trial conviction for conspiracy to commit murder, three counts of attempted murder with the use of a deadly weapon, and three counts of discharging a firearm out of a motor vehicle.

Houston contends that his Sixth Amendment rights were violated when the state trial court denied his motion to continue the trial so he could be represented by retained counsel, and denied his appointed counsel's motion to withdraw based on a conflict of interest arising from the Clark County Public Defender's prior representation of the prosecution's star witness. We hold that the trial court's denial of Houston's motion to continue the trial did not violate the Sixth Amendment and that the Nevada Supreme Court's rejection of this claim was neither contrary to, nor an unreasonable application of, federal law. We vacate and remand for an evidentiary hearing to determine whether Houston's right to conflict-free counsel was violated.

## I

We review de novo the denial of habeas relief by a district court. *Polk v. Sandoval*, 503 F.3d 903, 909 (9th Cir. 2007). Houston's § 2254 petition is governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a state prisoner is entitled to relief only if the state court ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d). A state court's decision is "contrary to" federal law if it applies a rule of law different from one set forth in Supreme Court holdings or makes a different determination based on "materially indistinguishable facts." *Earp v. Ornoski*, 431 F.3d 1158, 1182 (9th Cir. 2005) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (holding that the state decision must be "objectively unreasonable"). When applying AEDPA standards, this court reviews the "last reasoned decision" addressing the issue by a state court. *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). The Nevada Supreme Court's affirmance on direct appeal is the last reasoned opinion relevant to Houston's claims.

## II

We first consider whether Houston's Sixth Amendment rights were violated by the trial court's denial of his motion to continue the trial.

**[1]** To establish a Sixth Amendment violation based on the denial of a motion to continue, Houston must show that the trial court abused its discretion through an "unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.' " *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (*citing Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

**[2]** The record supports the state court's conclusion that the trial judge acted within his broad discretion in denying Houston's motion for a continuance to retain counsel. Specifically, he confirmed that counsel was able to proceed to trial, evaluated Houston's diligence in timely retaining private counsel, and weighed the potential impact a continuance may have had on the victims and witnesses. The continuance was sought just four days before trial was scheduled to begin. *See Slappy*, 461

U.S. at 13-15 (acknowledging that appropriate factors to consider include administration of justice, difficulty in assembling witnesses, bad faith delaying tactics, victims' concerns). Moreover, the motion to continue was based solely on Houston's desire to retain counsel because he was unsatisfied with his public defender's preparation for trial, not on any potential conflict of interest. Indeed, the potential conflict was not discovered until after the motion to continue was denied. Accordingly, the Nevada Supreme Court's application of *Slappy* and denial of relief on this claim was not "objectively unreasonable." *See* 28 U.S.C. § 2254(d)(1); *Andrade*, 538 U.S. at 75.

## III

Next, we consider whether Houston's right to conflict-free counsel was violated.

## A

Attorney Craig Jorgenson was appointed from the Clark County Public Defender's office to defend Houston against charges that he fired shots from his car into a car driven by Terrance Chadwick and occupied by two of Chadwick's sisters. Both the state and the defense agreed that there was a history of "bad blood" between Houston and Chadwick's family. This history included the murder of Chadwick's grandmother and the shooting of his brother, for which Houston was tried and acquitted.

After the jury had been empaneled, Jorgenson discovered for the first time that the Clark County Public Defender's office had represented the victim and key prosecution witness, Chadwick, in a factually-related case charging Chadwick with multiple counts of attempted murder with the use of a deadly

weapon. Ultimately, Chadwick pled guilty to firing a gun into a house.[1]

The next morning, before opening arguments, Jorgenson immediately moved to withdraw from Houston's case because he felt conflicted by his office's prior representation of Chadwick. Jorgenson explained that the earlier case involving Chadwick was "tied, factually, to the state's theory of retribution and the motive" in Houston's case and that Houston's defense theory implicated Chadwick as the aggressor. Jorgenson told the judge that his "heart is going to be with Mr. Chadwick," and that he believed Chadwick had not committed the crimes in the earlier case, for which Chadwick had been convicted and served a prison sentence. Such wrongful conviction, Jorgenson explained, may have given Chadwick a motive to act as the aggressor toward Houston or to lie in order to convict Houston out of revenge. Jorgenson also expressed concern that, under his cross examination, Chadwick may admit facts which would expose him to criminal liability or impact his parole status.

The judge denied the motion to withdraw, finding that no actual conflict existed because Jorgenson had not personally represented Chadwick in the previous proceeding. The judge further found that Chadwick had waived any potential conflict that may have existed by waiving his attorney-client privilege. Notably, the trial court did not seek nor require a conflict waiver from Houston.

At trial, Chadwick was the only witness who testified that Houston fired shots into the van occupied by Chadwick and his sisters. As such, his credibility was paramount.

Houston argues that the Clark County Public Defender's

---

[1]It is not clear from the record whether Chadwick was convicted of shooting into Houston's house, but Jorgenson's representations, as an officer of the court, suggest that Houston was the intended victim.

prior representation of Chadwick in a factually-related case created a conflict, which adversely affected Jorgenson's trial performance by limiting his impeachment of Chadwick through his prior conviction, his parole status, and his failed polygraph exam.

Based on the trial record alone, the Nevada Supreme Court denied relief on this claim because Jorgenson had not personally represented Chadwick, Chadwick had waived his attorney-client privilege, and the prior representation did not involve the same facts as Houston's case.[2] The Nevada Supreme Court made no mention of the trial judge's failure to obtain a waiver from Houston or of Jorgenson's subjective belief that his representation was conflicted.

The district court acknowledged that Chadwick's earlier case was "somewhat related" to Houston's prosecution, but concluded that Jorgenson performed as any non-conflicted attorney would have. Without discussing the trial court's failure to obtain a waiver from Houston, the district court denied relief because Houston failed to present evidence demonstrating that a conflict adversely affected counsel's performance.

## B

**[3]** The Supreme Court has held that a criminal defendant has a constitutional right to assistance of conflict-free counsel. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Where the conflict stems from counsel's representation of multiple defendants, the petitioner "must establish that an actual conflict of interest adversely affected his lawyer's performance."

---

[2]Because Chadwick's earlier prosecution and Houston's case involved many of the same parties and resulted from an ongoing feud between the families, we respectfully disagree with the Nevada Supreme Court's determination that the cases "did not involve the same facts." *See Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980) ("Substantiality is present if the factual contexts of the two representations are similar or related."); *see also Fitzpatrick v. McCormick*, 869 F.2d 1247, 1252 (9th Cir. 1989).

*Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). The Supreme Court has defined an "actual conflict" by the effect a potential conflict had on counsel's performance. *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).

**[4]** Where defense counsel timely points out a conflict of interest in joint representation, the trial court is required to investigate further; ignoring counsel's objection mandates automatic reversal of the resulting conviction. *See Holloway v. Arkansas*, 435 U.S. 475, 488 (1978). Conflicts can also arise from successive representation, particularly when a substantial relationship exists between the cases, such that the "factual contexts of the two representations are similar or related." *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980); *see also Fitzpatrick v. McCormick*, 869 F.2d 1247, 1252 (9th Cir. 1989). The Supreme Court, however, has left open the question whether conflicts in successive representation that affect an attorney's performance require a showing of prejudice for reversal. *See Mickens*, 535 U.S. at 176.

**[5]** In this case, after Chadwick waived his attorney-client privilege, the trial judge concluded that no conflict existed, without ever inquiring into the impact the prior representation may have had on Houston or on Jorgenson's performance. Indeed, the judge saw "no conflict here whatsoever" and failed to see "how Mr. Houston has a right to waive anything." Because any conflict that existed was Houston's either to waive or to assert, the trial judge's exclusive focus on Chadwick was misplaced, rendering the conflict inquiry inadequate. *See Lockhart v. Terhune*, 250 F.3d 1223, 1232-1233 (9th Cir. 2001). Similarly, the Nevada Supreme Court failed to reach the issue of whether Jorgenson acted adversely to his *current* client, or whether his performance prejudiced Houston.

**[6]** The limited record before us reveals that Jorgenson expressed concern over jeopardizing Chadwick's parole status, stated his belief that Chadwick had been wrongfully con-

victed in a case related to the ongoing feud at issue in Houston's case, and told the judge that his "heart is going to be with Mr. Chadwick." On these facts, the trial judge should have conducted a more complete evidentiary hearing on the potential conflict. As it now stands, the record is insufficient for us to determine whether an actual conflict of interest existed, or whether Jorgenson labored under a perceived conflict and limited his cross examination of Chadwick as a result.

## C

The proceedings in *Alberni v. McDaniel*, 458 F.3d 860 (9th Cir. 2006), *cert. denied*, 127 S.Ct. 1834 (2007) are instructive. In that case, public defender Buchanan represented the victim-witness, Flamm, prior to representing Alberni. *Id.* at 867-68. The earlier case involved a drug exchange between Flamm and Alberni that led to hostilities, later resulting in the shooting of another man. *Id.* Buchanan defended Alberni against charges that he murdered this other man and Flamm was called as an eyewitness to the altercation. *Id.* Counsel told the judge he felt conflicted by the prior representation and therefore unable to cross examine his former client. *Id.* at 868. The judge obtained a waiver of the attorney-client privilege from Flamm, but not from Alberni. *Id.* at 868-69. During trial, Buchanan failed to impeach Flamm through his prior conviction and parole status, among other things. *Id.* at 869, 872. Because the record was incomplete, we remanded for an evidentiary hearing to determine whether the attorney's performance was adversely affected by the prior representation. *Id.* at 872-73.

Houston argues that Chadwick's prior conviction, parole status and failed polygraph exam were available to Jorgenson to impeach Chadwick's credibility, but that Jorgenson chose not to use them. As support, Houston offers a number of examples in which similar evidence was admitted through various exceptions to Nevada's evidentiary rules. The state

insists, and the dissent would agree, that such evidence was inadmissable under Nevada law, so Jorgenson could not have used this information during Chadwick's cross examination.[3] But, as we have already stated, Chadwick's credibility was a particularly important aspect of the case and certainly central to Houston's defense. We are mindful not to speculate about Jorgenson's trial strategy, nor whether the trial judge would have admitted the impeachment evidence in this case. What is important is whether Jorgenson modified his representation of Houston in a way that adversely affected his performance, *see id.* at 871; *Lockhart*, 250 F.3d at 1231, and whether this effect prejudiced Houston; *i.e.*, whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. On the incomplete record before us, we cannot make that determination.

**[7]** An evidentiary hearing is needed to resolve these factual issues. AEDPA allows for an evidentiary hearing when a petitioner (1) alleges facts, which, if proven, would entitle him to relief; and (2) shows that he did not receive a full and fair hearing in the state court. *See* 28 U.S.C. § 2254(e)(2); *Alberni*, 458 F.3d at 873. Houston has alleged facts suggesting the existence of a conflict of interest and the prejudicial effect of Jorgenson's adverse performance, which, if proven, would entitle him to relief under *Strickland*. The trial court failed to fully investigate Jorgenson's perceived conflict and no state court has held a full and fair hearing on this serious

---

[3]While not determinative, it is worth noting that after the evidentiary hearing in *Alberni*, the district court concluded that an actual conflict existed. The district court reasoned that counsel's failure to impeach the victim-witness (through means very similar to those available in Houston's case and governed by the same Nevada evidentiary rules) evidenced that Alberni's attorney curtailed his performance because of a perceived conflict. *See also Lewis v. Mayle*, 391 F.3d 989, 997-1000 (9th Cir. 2004) (holding that counsel's failure to impeach former client-witness with prior conviction and probation status amounted to actual conflict adversely affecting representation).

conflict allegation. As a result, the Nevada Supreme Court's conclusion that no actual conflict existed is based on an incomplete record, devoid of sworn testimony explaining Jorgenson's tactical reasons, if any, for not attempting to vigorously impeach Chadwick with his parole status or failed polygraph exam. Similarly, the district court prematurely determined that Jorgenson's performance was not adversely affected by a conflict, without hearing from Jorgenson on the matter.

[8] We are cognizant of the potential increase in litigation arising from the imputation of one attorney's conflict to an entire public defender's office. However, the facts of this case are unique and, therefore, unlikely to open any floodgates of imputed conflict claims. This is particularly true because this case concerns a longstanding feud between Houston and Chadwick and the prior representation at issue here was the direct result of that "bad blood." We are confident that allowing further exploration of the fact that Jorgenson subjectively felt conflicted and expressed this to the judge will not create a broad rule of imputed disqualification.[4]

[9] We therefore reverse the portion of the district court's

---

[4]While the dissent correctly points out that neither party formally requested an evidentiary hearing, Houston raised the need for such a hearing during oral arguments. Moreover, we have previously remanded for an evidentiary hearing sua sponte "to assist the court in making an accurate determination." *See Butler v. Curry*, 528 F.3d 624, 651 (9th Cir. 2008).

We see a legitimate need for further factfinding in this case before an accurate determination of the issues can be made. Houston suggested that Jorgenson failed to "fully disclose what more he might know about this case," and even counsel for respondent admitted that it is "possible that he had some knowledge" about Chadwick's prior case. During oral arguments, when asked why Jorgenson expressed sympathy for Chadwick, counsel for respondent replied "I don't have a clear record on that" and agreed that it was "odd." These speculative responses, combined with the inadequate and confused questioning by the state court, convince us that further development of the record is required.

decision pertaining to the conflict of interest and remand with instructions to conduct an evidentiary hearing to determine whether a conflict of interest adversely affected counsel's performance and, if so, whether there is a reasonable probability that the result of the trial would have been different in the absence of that effect. *See Strickland*, 466 U.S. at 694; *Alberni*, 458 F.3d at 874. We affirm the remainder of the district court's judgment.

**AFFIRMED IN PART, VACATED AND REMANDED FOR AN EVIDENTIARY HEARING.** Each party shall bear their own costs.

---

MILAN D. SMITH, JR., Circuit Judge, concurring in part, dissenting in part:

I concur with Part II's holding that the trial court's denial of the motion to continue was not contrary to or an unreasonable application of *Morris v. Slappy*, 461 U.S. 1 (1983). However, I see no reason to order an evidentiary hearing regarding the alleged violation of Houston's Sixth Amendment right to conflict-free counsel. Houston has never requested a hearing. Neither has the State. The trial court inquired into the matter, and it is already apparent that Houston's claim lacks merit. I therefore dissent from Part III of the majority opinion.

I.

The Supreme Court has established that, absent a showing of prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), habeas relief can be granted due to the violation of a defendant's Sixth Amendment right to conflict-free counsel in either of two circumstances: First, relief is granted if defense counsel timely objected to concurrent representation of two or more defendants with conflicting interests and the trial court failed to take "adequate steps" to ascertain whether the risk of

conflict was sufficient to require separate counsel. *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978). Second, in any other case of multiple concurrent representation, relief is granted only if the defendant demonstrates that an "actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *see also Mickens v. Taylor*, 535 U.S. 162, 174-76 (2001). Houston is entitled to an evidentiary hearing if (1) he alleged facts that, if proven, would demonstrate a violation of his rights under *Holloway* or *Sullivan*, and (2) he did not receive a full and fair opportunity to develop those facts. *Earp v. Ornoski*, 431 F.3d 1158, 1167 (9th Cir. 2005). For the reasons described below, I would hold that Houston failed to allege facts that would entitle him to habeas relief under *Holloway*. I would also hold that Houston already received a full and fair opportunity to develop the facts regarding his *Sullivan* claim, and that those facts establish the absence of a Sixth Amendment violation.

A.

An evidentiary hearing regarding the adequacy of the trial court's inquiry under *Holloway* clearly is not required. The record already contains a complete transcript of the December 2000 hearing during which the trial court inquired into Jorgenson's alleged conflict of interest. Houston does not contend that additional fact-finding regarding the circumstances or substance of that hearing is necessary.

Moreover, it is apparent from the existing record that Houston is not entitled to habeas relief under *Holloway*. "*Holloway* . . . creates an automatic reversal rule only where defense counsel is forced to represent *codefendants* over his timely objection." *Mickens*, 535 U.S. at 168 (emphasis added). Because Jorgenson was representing only one defendant— Houston—and Houston was not a codefendant with Chadwick, it follows that *Holloway* does not apply.

Even if *Holloway* applied, I would hold that the trial court took "adequate steps" to ascertain the risks presented by the

alleged conflict of interest. The court held a hearing on the matter in December 2000. During that hearing, the court gave Jorgenson an opportunity to explain at length the nature of any conflict and inquired about its anticipated impact on his ability to cross-examine Chadwick. The court also inquired about the extent of Jorgenson's relationship with Chadwick, Jorgenson's knowledge of the case in which the public defender's office had represented Chadwick, and whether Jorgenson possessed any confidential information from the prior representation. The transcript of this discussion spans twenty pages. The inquiry thus went well beyond the inquiry found constitutionally inadequate in *Holloway*. *See* 435 U.S. at 484 n.7 (explaining that the trial court "cut off any opportunity of defense counsel to do more than make conclusory representations"). The majority's assertion that the trial court "[n]ever inquir[ed] into the impact the prior representation may have had on Houston or on Jorgenson's performance," Maj. Op. at 9008, is simply not consistent with the record.

The majority concludes that the state trial court's inquiry was inadequate because it focused exclusively on whether Jorgenson's representation of Houston would be adverse to Chadwick's interests, rather than to Houston's. Maj. Op. at 9008. The premise of that conclusion is incorrect. The trial court understood the issue to be whether Chadwick's role as a government witness would render Jorgenson unable "to defend [Houston] in a manner that would be otherwise his defense if another attorney was operating or deferred." In line with this understanding, the court asked whether the public defender's office's prior representation of Chadwick would compromise Jorgenson's ability to challenge Chadwick's veracity as a government witness. The record thus shows that the trial court correctly understood the issue. Although the State Supreme Court seems to have misunderstood, Maj. Op. at 9008, it does not follow that the trial court's inquiry was inadequate.

### B.

I also disagree that an evidentiary hearing is required to ascertain whether Houston was deprived of effective assistance of counsel under the *Sullivan* test. To establish an "actual conflict of interest"—i.e., one that "adversely affected" his counsel's performance, *Mickens*, 535 U.S. at 172— Houston would have to show that "some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Foote v. Del Papa*, 492 F.3d 1026, 1029-30 (9th Cir. 2007). Houston cannot meet this standard.

The trial court's December 2000 hearing was not an evidentiary hearing, and only counsel were present, but it was nevertheless sufficient because the parties' representations revealed that mixed personal loyalties could not possibly have affected Jorgenson's performance. Those representations included the following: The public defender's office for which Jorgenson worked no longer represented Chadwick. Jorgenson never personally represented Chadwick, did not know him, and knew nothing about his prior case other than that Chadwick had failed a polygraph test. Until the day before the December 2000 hearing, Jorgenson did not even know that his office had represented Chadwick. Jorgenson also confirmed that he had no "inside information or what might be considered personal or secret information that has been imparted by Mr. Chadwick to his counsel," and that he did not possess "any information concerning Mr. Chadwick that would not be available to any other defense attorney." Houston does not dispute the accuracy of any of these statements. Considering them together, Jorgenson's isolated assertion that he could not effectively represent Houston because his "heart [would] be with . . . Chadwick" was, to put it mildly, incredible. We should not fault the state trial court for declining to conduct an evidentiary hearing that no one has

requested, on an assertion of divided loyalty that cannot possibly be credited.

An evidentiary hearing is also unnecessary to determine whether the interest of the public defender who previously represented Chadwick can be imputed to Jorgenson in a manner that renders the representation ineffective. The relevant facts are already apparent, and no court has held an actual conflict to exist for the purposes of the Sixth Amendment purely on the basis of such a relationship. As we have recognized, the Supreme Court has never extended *Sullivan* to circumstances involving either successive representation or imputed conflicts, much less to circumstances involving both. *See Earp*, 431 F.3d at 1184 ("*Mickens* . . . specifically and explicitly concluded that *Sullivan* was limited to joint representation."); *Lambert v. Blodgett*, 393 F.3d 943, 986 (9th Cir. 2004) ("[T]he Supreme Court has never applied the ethical imputed disqualification rule in Sixth Amendment analysis."). By emphasizing the particularly high probability of prejudice in cases of multiple concurrent representation, *Mickens* suggests that, if anything, the Court is disinclined to extend *Sullivan* to circumstances such as those encountered by Houston. *See Mickens*, 535 U.S. at 174-76. At least two circuits, moreover, have held that one attorney's representation of a defendant in a trial involving a government witness previously represented by another attorney from the same office does not on its own give rise to an actual conflict of interest. *See United States v. Blount*, 291 F.3d 201, 212 (2d Cir. 2002); *United States v. McCullah*, 76 F.3d 1087, 1098-99 (10th Cir. 1996). Other courts have similarly held that successive representation of defendants with adverse interests by different attorneys at a public defender's office does not independently create an actual conflict. *See United States v. Trevino*, 992 F.2d 64, 65-66 (5th Cir. 1993); *Salam v. Lockhart*, 874 F.2d 525, 527-28 (8th Cir. 1989). Insofar as the majority is ordering an evidentiary hearing to enable Houston to explore a Sixth Amendment claim based solely on an imputed conflict of interest, our decision is at odds with this precedent and the

Supreme Court's instruction that the Sixth Amendment does not protect against a "mere theoretical division of loyalties." *Mickens*, 535 U.S. at 171.

Finally, Houston has failed even to allege that, due to the conflict, some "*plausible* alternative defense strategy or tactic might have been pursued but was not." *Foote*, 492 F.3d at 1029-30 (emphasis added); *see also Campbell v. Rice*, 408 F.3d 1166, 1170-71 (9th Cir. 2005) (en banc) (holding that the petitioner failed to show adverse effect because the trial tactics that counsel neglected to pursue would not have succeeded). The conflict of interest purportedly caused Jorgenson to refrain only from impeaching Chadwick with evidence that he had failed a polygraph, pled guilty to felony firearms charges in 1998, and spent time as a parolee thereafter. None of these tactics would have succeeded.

Polygraph results are admissible under Nevada law only when the prosecuting attorney, the defendant, and defense counsel all stipulate in writing for the defendant's submission to the test. *Jackson v. State*, 997 P.2d 121, 121-22 (Nev. 2000). Houston does not contend that the required stipulations were made, and the prosecutor specifically explained at the December 2000 hearing that Chadwick's polygraph results would not be admissible. Jorgenson therefore cannot be faulted for declining to cross-examine Chadwick on the matter. If he had, the prosecutor would have objected, and the trial court would have sustained the objection.

Houston also cannot claim adverse effect on the basis of Jorgenson's cross-examination regarding Chadwick's prior felony conviction. Evidence of such a conviction is generally admissible for the purpose of attacking witness credibility. Nev. Rev. Stat. § 50.095(1). However, "the details and circumstances of the prior crimes are . . . not appropriate subjects of inquiry." *Plunkett v. State*, 437 P.2d 92, 93 (Nev. 1968). Jorgenson asked Chadwick whether he had pled guilty in 1998 to a felony for "firing a gun into a house." Chadwick

responded that he had. Any further inquiry would have been precluded by *Plunkett*. This rule was also made apparent to Jorgenson at the pretrial hearing in December 2000.

Nor would Jorgenson have been permitted to cross-examine Chadwick about his parole status. Nevada Revised Statutes § 50.095(1) permits an opposing party to impeach a witness with evidence of a prior felony conviction, but it prohibits inquiry into the resulting sentence. *Jacobs v. State*, 532 P.2d 1034, 1036 (Nev. 1975). Houston fails to articulate any theory on which the evidence of Chadwick's parole status would have been relevant.

I do not find *Alberni v. McDaniel*, 458 F.3d 860 (9th Cir. 2006), to be controlling. We remanded for an evidentiary hearing on a *Sullivan* claim in that case because, unlike here, the trial court never inquired into the possible adverse impact of the alleged conflict on the defendant's representation. 458 F.3d at 871. The absence of such an inquiry was particularly problematic because there was ample reason to believe that the defense attorney had limited cross-examination of his own former client due to the conflict. The attorney objected to cross-examining the witness, and when the witness took the stand the attorney declined to impeach him on multiple material issues notwithstanding the apparent admissibility of the impeachment evidence. *Id.* at 868-69. The cross-examination itself took up only three pages of transcript. *Id.* at 869. By contrast, the cross-examination of Chadwick, which covered over thirty pages, closely questioned Chadwick's recollection of the crime and pointed out internal inconsistencies in his testimony. Coupling this fact with the complete unfamiliarity between Jorgenson and Chadwick, and with the absence of even an allegation of a plausible alternative defense strategy, we have no reason to suspect the possibility of an actual conflict of interest.

II.

The majority's approach will burden district courts with evidentiary hearings even on obviously unmeritorious Sixth Amendment claims. I would affirm the denial of the petition.