**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVE HOUSTON,
        *Petitioner-Appellant,*

v.

JAMES SCHOMIG; NEVADA ATTORNEY
GENERAL,
        *Respondents-Appellees.*

No. 10-15048

D.C. No.
2:04-cv-00785-
RLH-GWF

OPINION

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, Chief District Judge, Presiding

Submitted February 14, 2011*
San Francisco, California

Filed March 8, 2011

Before: Diarmuid F. O'Scannlain and Stephen S. Trott,
Circuit Judges, and Tena Campbell, District Judge.**

Opinion by Judge Trott

---

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Tena Campbell, Senior United States District Judge for the District of Utah, sitting by designation.

## COUNSEL

Ryan Norwood, Assistant Federal Public Defender, Las Vegas, Nevada, for the petitioner-appellant.

Dennis C. Wilson, Senior Deputy Attorney General, Las Vegas, Nevada, for the respondents-appellees.

## OPINION

TROTT, Circuit Judge:

Petitioner Houston's timely appeal arises from the result of an evidentiary hearing ordered by us on remand in *Houston*

*v. Schomig*, 533 F.3d 1076 (9th Cir. 2008). The purpose of the evidentiary hearing was "to determine whether a conflict of interest adversely affected [Houston's] counsel's performance and, if so, whether there is a reasonable probability that the result of the trial would have been different in the absence of that effect." *Id.* at 1083. The possible conflict issue arose because Houston's lawyer in his trial on charges of conspiracy to commit murder, etc., Craig Jorgenson, was part of the same Public Defender's Office that represented a key witness against Houston — Terrance Chadwick — in a previous case. Jorgenson himself had nothing to do with Chadwick's representation by another lawyer in his office.

On remand, the district court determined that Houston "was not adversely effected [sic] by the prior representation." We review de novo the district court's denial of a habeas petition raising an ineffective assistance of counsel claim. *See Howard v. Clark*, 608 F.3d 563, 567 (9th Cir. 2010). We review for clear error the district court's factual findings. *See id.* Because the district court's findings and conclusions are well supported by the record and the law, we affirm.

## DISCUSSION

**[1]** Houston's lawyer, Craig Jorgenson, never personally represented the witness, Chadwick, against his client Houston. Thus, in this context, the Sixth Amendment's right to conflict-free counsel was violated only if Jorgenson's *office*'s prior representation of Chadwick "adversely affect[ed] [his] performance." *Alberni v. McDaniel*, 458 F.3d 860, 870 (9th Cir. 2006). This is so because " 'an actual conflict of interest means precisely a conflict that affected counsel's performance — as opposed to a mere theoretical division of loyalties.' " *Id.* (quoting *Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (emphasis and alterations omitted)).

Houston's attorney relies on various circumstances in his attempt to show that Jorgenson's performance adversely affected Houston.

First and foremost, Jorgenson made a failed motion prior to trial to withdraw from the case, filed on the ostensible ground that he felt conflicted by his office's prior representation of Chadwick. In arguing this motion, Jorgenson said at the time that "his heart was going to be with Mr. Chadwick," whom he would have to cross-examine in his client's defense.

**[2]** When this motion and statement were carefully explored on remand, however, Jorgenson's statement about his "heart" takes on a meaning which supports the district court's conclusion:

(By Houston's Attorney)

Q.  Okay. Do you recall telling Judge Mosley that — when the conflict was being discussed that your heart would be with Mr. Chadwick? Do you remember that statement?

A.  Yes.

Q.  What did you mean by that?

A.  I meant that since we had represented Mr. Chadwick in his preceding trial that he — we owed a loyalty to him and that it could very well look to Mr. Houston that I would not give him a hundred percent because Mr. Chadwick was our — was our prior client too so, he'd have to wonder who I actually — who we actually cared most about, or how could we actually be vigorous in defending him when that required us trying to make Mr. Chadwick look bad when he had been our prior client.

. . .

(By Counsel for the Warden)

Q.   All right. On December 12th, the following day, the judge had a hearing on your motion to withdraw as counsel because the Public Defender's Office had previously represented Mr. Chadwick?

A.   Right.

Q.   Did you argue to the Court during that hearing that this previous representation by your office was a conflict of interest?

A.   Yes.

Q.   And what were you trying to accomplish through this motion or this hearing?

A.   To get what Mr. Houston wanted and that was his — the private attorney that he had hired to represent him.

Q.   So you wanted — basically it was, as you said previously in your earlier testimony, you were trying again to persuade Judge Mosley to let the new attorney in and to let you out and continue the case?

A.   Right.

Q.   So that was your main goal?

A.   Yeah.

Q.   Okay. Did you actually feel conflicted by your office's prior representation of Mr. Chadwick?

A.   No.

Q. All right. How would you characterize this conflict where your office, two years ago, different attorneys, had previously represented Mr. Chadwick?

A. Ask the question again.

Q. Okay. How would you characterize the conflict that you perceived?

A. Oh, technical.

Q. So it was a technical conflict. You weren't, as you previously testified, conflicted by the fact that — of this previous representation?

A. Not me personally. I didn't feel conflicted, no.

**[3]** Jorgenson also explained that "[i]f my office had represented a guy in the past and he is now a complaining witness, I get off the case, end of story." He added that he did not alter his representation of Houston in any way because the Public Defender's Office had previously represented Chadwick. Under questioning by the trial judge, Chadwick waived his attorney-client privilege, leaving Jorgenson free to attack him on cross as he saw fit.

The second circumstance offered by Houston's attorney in support of his case is that Jorgenson "failed to cross-examine Chadwick about the circumstances of his prior conviction."

**[4]** Jorgenson testified, however, that the alleged conflict did not cause him to limit his use of the prior conviction in impeaching Chadwick. Moreover, Jorgenson began his cross-examination, according to his testimony, with an alternative line of questioning that was intended to show the jury "that Mr. Chadwick had a compelling reason to get even with Mr. Houston and therefore he was very biased against him and

would say anything to get him in trouble." Jorgenson thus demonstrated that his ability to impeach Chadwick was not impaired by any feeling of loyalty toward him.

**[5]** Third, Jorgenson did not elicit from Chadwick his parole status. However, this alleged failure did not arise from any sense of obligation to Chadwick but from trial court rulings or possibly just oversight.

Finally, Chadwick had flunked a polygraph in the *earlier* case. Jorgenson found out about this possible credibility factor by reading his office's file about that case. He made no attempt to introduce this factor in Houston's trial. Houston's attorney now says this was a material failure caused by the conflict.

**[6]** Jorgenson said he felt "uncomfortable" after reading the polygraph file, but he also explained that the polygraph failure was not admissible in any event. He suggested that because of having read the file he "didn't spend any time trying to come up with something extremely imaginative about the failed polygraph test," but also that there was no way he could ever "get it in." The district court agreed with Jorgenson that the polygraph results were not admissible without a joint stipulation. He noted that the prosecutor would not have consented. Thus, no adverse effect can be attached to this alleged failure.

**[7]** Finally, Houston attempts to claim that Jorgenson's "failures" amounted to actionable incompetence under *Strickland v. Washington*, 466 U.S. 668 (1984). This claim may be beyond the scope of the remand, but in any event, Houston has not demonstrated any prejudice from the omissions of which he complains.

AFFIRMED.